**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA,

v.

CHARLTON S. OSBOURNE,

        Defendant.

**REPORT AND**
**RECOMMENDATION**
14-CR-6136 (FPG)

## Preliminary Statement

On December 9, 2014, a Federal Grand Jury returned a Second Superseding Indictment (Docket # 55) in this matter, charging Charlton Osbourne (hereinafter "defendant" or "Osbourne") with conspiracy to possess and distribute narcotics in violation of 21 U.S.C. § 846, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Docket # 55. Pursuant to the Scheduling Order issued by the undersigned, defense counsel filed omnibus motions relating to the specific charges against the defendant (Docket # 150) and the government responded (Docket # 163). On December 17, 2015, the Court heard arguments from the parties, resolving the majority of the defendant's motions and scheduling an evidentiary hearing on his motion to suppress statements. Docket # 216. The suppression hearing was held before this Court on March 9, 2016, and the parties filed post-hearing briefs addressing the merits of their claims. See Docket ## 281, 290. The following is my Report and Recommendation as to the defendant's motion to suppress.

## Findings of Fact

The events giving rise to defendant's suppression motion occurred on June 26, 2014. See March 9, 2016 Suppression Hearing Transcript (hereinafter "TR.") (Docket # 260) at 6. On that date, law enforcement officials executed a series of search warrants obtained in relation to an investigation involving Osbourne's co-defendant, including one warrant authorizing the search of Osbourne's residence. Id. at 6, 23. After the search, Osbourne was taken into custody by law enforcement and transported to a holding cell in the Public Safety Building in Rochester, New York. Id. at 6-8. That evening, at approximately 10:00 p.m., Special Agent Sabatino Smith (hereinafter "Special Agent Smith") with the Drug Enforcement Administrative ("DEA") and Investigator Timothy Pearce (hereinafter "Investigator Pearce") with the Rochester Police Department ("RPD") met with the defendant to interrogate him. Id. at 8.

Special Agent Smith and Investigator Pearce took Osbourne, who was handcuffed, from his holding cell to the "roll call room" for the interview. Id. at 9, 20. Once in the "roll call room," which Special Agent Smith described as a large room containing approximately a dozen tables, the defendant's handcuffs were removed and he was seated at a table across from Special Agent Smith and Investigator Pearce. Id. at 8-9. Special Agent Smith and Investigator Pearce then proceeded to introduce themselves to the

2

defendant and explain to him his suspected involvement in their ongoing investigation. Id. at 9. Following this brief introduction, Investigator Pearce asked defendant about his educational level and literacy. Id. at 13-14. The defendant indicated, and Investigator Pearce recorded in writing, that he "graduated from MCC" and was able to read and write. Id. at 13-14, 38-39. Next, while relying on an RPD card containing a recitation of the rights owed to criminal suspects during custodial interrogations set forth in Miranda v. Arizona, 384 U.S. 436 (1966), Investigator Pearce read the defendant his Miranda warning. TR. at 9-10, 23. According to the testimony of Special Agent Smith and Investigator Pearce, the card was placed on the table in a position such that Investigator Pearce could read the Miranda warning aloud while defendant read it to himself. Id. at 18-19, 38-41. Investigator Pearce then asked the defendant if he understood his rights and whether, with these rights in mind, he agreed to speak with Investigator Pearce and Special Agent Smith. Id. at 15-16, 39-40. Osbourne answered affirmatively to both questions. Id.

Special Agent Smith and Investigator Pearce then began their interview of the defendant. Id. at 16, 44. According to their testimony, Osbourne did not appear intoxicated and was responsive to questioning during the interview. Id. at 16, 39. Special Agent Smith testified that Osbourne did not appear to be uncomfortable or in pain, that he was never denied use of the restroom, and that

he was not threatened. Id. at 17. Though Special Agent Smith was unable to recall whether he or Investigator Pearce left the "roll call room" or used profanity during the interview,[1] he did recall that he told the defendant that he would let the prosecuting attorney know if the defendant cooperated with their investigation. Id. at 26, 31-33. After approximately thirty minutes, Osbourne made his first request for counsel, at which point Special Agent Smith and Investigator Pearce ended the interview and returned Osbourne to his holding cell for his eventual release. Id. at 16-17, 43-44. None of this interrogation was audio- or videotaped. Id. at 26, 42.

## Discussion

Osbourne now seeks to suppress the statements he made to Special Agent Smith and Investigator Pearce on June 26, 2014, see Docket # 150 at 30-33, asserting that the statements were: the result of a defective administration of his Miranda rights; given involuntarily; and taken without being recorded pursuant to DEA and RPD policy. See Docket # 281 at 3-7. Each argument will be addressed in turn.

Defective Miranda Warning: The defendant's objection to the

---

[1] Special Agent Smith stated that he occasionally uses profanity during custodial interviews and acknowledged that it was possible he did so here when he suspected Osbourne of being untruthful. TR. at 32. Investigator Pearce testified that he did not recall if Special Agent Smith used profanity. Id. at 41.

4

government's reading of his Miranda warning centers on the testimony of Special Agent Smith and Investigator Pearce at the March 29, 2016 evidentiary hearing. Id. at 4. Specifically, Osbourne maintains that "Special Agent [Smith] testified Mr. Osbourne was given a copy of his warnings and Officer Pearce read them to him simultaneously," while "Officer Pearce . . . testified that he read the warnings and the [d]efendant did not." Id. These inconsistencies, according to the defendant, prove that "there was insufficient adequate notice [to the defendant] and the statements must be suppressed." Id.

It is well-settled that law enforcement may not interrogate a suspect who has been taken into custody without first advising them of their Miranda rights. See generally Miranda v. Arizona, 384 U.S. 436 (1966); see also United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004). In Miranda, the Supreme Court held that, in order for a defendant's custodial statements to law enforcement to be admissible, the government must demonstrate that it informed the defendant of their constitutional right against self-incrimination and that the defendant voluntarily waived that right. See Miranda, 384 U.S. at 444. A defendant is entitled to be informed of their Miranda rights only in the context of a custodial interrogation. Dickerson v. United States, 530 U.S. 428, 434-35 (2000); see also Tankleff v. Senkowski, 135 F.3d 235, 242-43 (2d Cir. 1998). In the Second Circuit, the "in custody" requirement from the Supreme Court's decision in Miranda is satisfied when the questioning is

5

"conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." United States v. Morales, 834 F.2d 35, 38 (2d Cir. 1987).

Here, the government does not contest that Osbourne was subject to a custodial interrogation when he spoke to Special Agent Smith and Investigator Pearce on June 26, 2014. See Docket # 290. Accordingly, the question presented to this Court is whether the defendant was properly advised of his rights and waived them before speaking with law enforcement. "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) (citing Moran v. Burbine, 475 U.S. 412, 421 (1986)).

Though the defendant argues that he was provided "insufficient adequate notice" of his rights under Miranda (see Docket # 281 at 4), a review of the record establishes that Investigator Pearce properly advised Osbourne of his Miranda rights and that the defendant understood those rights before waiving them. Both Special Agent Smith and Investigator Pearce testified that Investigator Pearce read the defendant his Miranda rights verbatim from a "rights card" created by the RPD. TR. at 9-10, 15, 39-40. Moreover, nothing in the record indicates that Osbourne was

6

intoxicated or injured when Investigator Pearce read him his rights, and the testimony provided at the evidentiary hearing establishes that the defendant understood his Miranda warnings and nevertheless wished to speak with Special Agent Smith and Investigator Pearce. Id. at 15-16, 39-40. The record also establishes that, following Osbourne's indication that he agreed to speak with law enforcement, Special Agent Smith and Investigator Pearce interviewed the defendant until he made a request for counsel. Id. at 16-17, 43-44. Finally, the defendant's suggestion that Special Agent Smith provided testimony that was "completely different" from Investigator Pearce's testimony regarding the government's efforts to advise Osbourne of his Miranda rights is, put simply, not supported by the record before this Court. Indeed, both Special Agent Smith and Investigator Pearce testified that Investigator Pearce placed the RPD card containing a recitation of the Miranda warning on the table between him and the defendant, adjusted himself so that he could properly read the card, and then read the warning aloud while the defendant read it to himself. Id. at 14-15, 18-19, 29-30, 38-41. Accordingly, I find that Osbourne was adequately advised of his rights pursuant to Miranda and that he knowingly and voluntarily waived those rights prior to making the statements at issue.

Voluntariness of Osbourne's Statements: The defendant next asserts that his statements from June 26, 2014 were made

involuntarily. He argues that the possibility of Special Agent Smith cursing at him and the fact that Special Agent Smith told him that he would let the prosecutor know if he cooperated with the investigation, taken together and by themselves, raise the specter of impermissible coercion and involuntariness. Docket # 281 at 4-5. In response, the government contends that "there is no proof that anyone cursed at Osbourne during the interview," and, "[e]ven if Agent Smith had cursed at Osbourne . . ., there is no proof that any such cursing somehow overcame Osbourne's voluntariness or his ability to invoke his rights." Docket # 290 at 4.

"A [custodial statement] is admissible under the Constitution only if it is made voluntarily." United States v. Orlandez-Gamboa, 320 F.3d 328, 332 (2d Cir. 2003). Accordingly, in addition to establishing that the defendant knowingly and voluntarily waived his Miranda rights, "the government must also establish that the defendant's statements were not made involuntarily within the meaning of the Due Process Clause." United States v. Tuttle, No. 13-cr-6109, 2014 WL 3695475, at *12 (W.D.N.Y. July 24, 2014) (citing Dickerson v. United States, 530 U.S. 428, 433 (2000) (recognizing that there are "two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment.")). The prosecution bears the burden of demonstrating that a custodial statement was voluntary

by a preponderance of the evidence. United States v. Siddiqui, 699 F.3d 690, 707 (2d Cir. 2012), cert. denied, 133 S. Ct. 2371 (2013). In making the voluntariness determination, no single criterion controls; instead, the Court should consider the "totality of circumstances" surrounding the particular interrogation at issue. Arizona v. Fulminante, 499 U.S. 279, 286 (1991). "Relevant factors that should be considered include the accused's age, his lack of education or low intelligence, the failure to give Miranda warnings, the length of detention, the nature of the interrogation, and any use of physical punishment." Campaneria v. Reid, 891 F.2d 1014, 1020 (2d Cir. 1989), cert. denied, 499 U.S. 949 (1991); see also Green v. Scully, 850 F.2d 894, 901-02 (2d Cir. 1988) ("In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials."), cert. denied, 488 U.S. 945 (1988). In short, "[a] confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991); see also Colorado v. Connelly, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the

Fourteenth Amendment."). "[T]races of brutality, psychological duress, threats, or unduly prolonged interrogation," for example, give rise to a finding of involuntariness. United States v. Moore, 670 F.3d 222, 233 (2d Cir. 2012) (citations, quotations, and alterations omitted).

A review of the record before this Court demonstrates that, in addition to knowingly and voluntarily waiving his properly administered Miranda rights, the defendant voluntarily made the custodial statements he now seeks to suppress. After all, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was compelled despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson, 530 U.S. at 444; see also United States v. Williams, 681 F.3d 35, 45 (2d Cir.2012) (noting that the knowing waiver of Miranda rights is "highly probative of voluntariness" of subsequent statement). To start, and contrary to the defendant's assertion, see Docket # 281 at 281, there is no evidence that Special Agent Smith or Investigator Pearce used profanity during the course of their interview with the defendant. While Special Agent Smith acknowledged that it was possible he used profanity when he suspected Osbourne of being untruthful, see TR. at 32-33, neither he nor Investigator Pearce could recall any specific instance where he did. Id. at 32-33, 41-42. Moreover, assuming arguendo that Special Agent Smith did use profanity, such behavior does not

demonstrate the kind of coercive police conduct necessary to overbear Osbourne's will. The defendant has provided no caselaw for this assertion and the Court was unable to locate any supporting his position. See United States v. Twiddy, 2007 WL 3256649, at *7 (D. Colo. Nov. 2, 2007) ("[W]hile Agent Altman may have raised his voice and used profanity, the circumstances fail to suggest that such tactics overbore Defendant's will.").

Similarly, the defendant's assertion that involuntariness is triggered by the combination of possible profanity and Special Agent Smith's statement that he would "pass along to the prosecutor" any information about Osbourne's cooperation is without merit. See United States v. Guarno, 819 F.2d 28, 31 (2d Cir. 1987) ("[A] confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials." (citations omitted)). Indeed, in United States v. Leon Guerrero, the case on which the defendant solely relies for this proposition, the court explained that statements made during a custodial confession are involuntary when prompted "by an agent accusing defendant of lying, reciting the maximum penalties of crimes that could be charged, threatening defendant that she might not see her two-year-old child if she went to prison, and promising defendant that [the] agent would inform the prosecutor if she cooperated or refused to cooperate[.]" 847 F.2d 1363, 1366 n.2 (9th Cir. 1988) (citing United States v. Tingle, 658 F.2d 1332, 1332 (9th Cir.

11

1981)). There is no evidence of that degree of undue coercion before the Court. To the contrary, the evidence elicited at the evidentiary hearing demonstrates that Special Agent Smith and Investigator Pearce interrogated defendant for approximately thirty minutes and that, during that time, the defendant appeared lucid, sober, and responsive. TR. at 16-17, 39, 43-44. There is no evidence that Osbourne was physically or verbally threatened or that he was not denied access to the restroom. Id. Moreover, the evidentiary hearing record is devoid of evidence to suggest that Osbourne became emotionally distressed during the interrogation such that his will was overborne – in fact, the interrogation ended only thirty minutes after it began because the defendant made clear that he wanted to speak to an attorney. In short, based on the totality of the circumstances, the Court finds no support for the conclusion that Osbourne's statements were given involuntarily or subject to undue coercion or deception.

Law Enforcement's Failure to Record the Interrogation: Lastly, Osbourne argues that the statements he made on June 26, 2014, must be suppressed because the interrogation was not recorded. Docket # 281 at 6-7. Though Special Agent Smith and Investigator Pearce acknowledged that the DEA and RPD, respectively, have policies requiring the audio- and videotaping of interrogations, TR. at 26, 42, their failure to comply with those policies does not, under current well-established caselaw, require the Court to grant

defendant's motion to suppress. See United States v. Piervinanzi, 23 F.3d 670, 682 (2d Cir. 1994) (holding that federal guidelines, like those requiring attorneys to consult with the Department of Justice before bringing money laundering charges, "provide no substantive rights to criminal defendants"); see also United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party."); Caballero v. Conway, No. 07-cv-6181, 2010 WL 4878956, at *8 (W.D.N.Y. Dec. 1, 2010) (finding no "[f]ederal precedent standing for the proposition that the failure to videotape . . . station-house interrogations violates any right guaranteed under the United States Constitution" and noting "that several [f]ederal circuit courts of appeals have concluded that the United States Constitution does not obligate police officers to record interrogations or confessions" (string citation omitted)); Martin v. Lord, 378 F. Supp. 2d 184, 186 n.1 (W.D.N.Y. 2005) ("[T]here is a lack [of] Supreme Court or other federal precedent standing for the proposition to that the failure to videotape police interrogations violates any right guaranteed under the United States Constitution."). While Osbourne encourages the Court to reject the Second Circuit precedent on this issue, see Docket # 281 at 7, the evidence before the undersigned, which establishes that the defendant knowingly waived his Miranda rights and voluntarily spoke

to Special Agent Smith and Investigator Pearce, renders this case the improper vehicle for such a decision.

## Conclusion

For the reasons stated, it is my Report and Recommendation that defendant's motion to suppress his statements (Docket # 150) be denied.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: October 5, 2016
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

*/s/ Jonathan W. Feldman*
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: October 5, 2016
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).