UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

CHARLTON OSBOURNE,

Defendant.

Case # 14-CR-6136-FPG

DECISION AND ORDER

# INTRODUCTION

On May 21, 2020, Defendant Charlton Osbourne, an inmate incarcerated at McKean Federal Correctional Institution, filed a motion for compassionate release from prison due to the COVID-19 pandemic. *Id.* On June 26, 2020, the Court denied Defendant's motion. ECF No. 906. On July 10, 2020, Defendant filed a motion for reconsideration. ECF No. 910. For the reasons that follow, Defendant's motion is DENIED.

# BACKGROUND

On February 14, 2018, Defendant pled guilty to conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ECF No. 507. On May 23, 2018, he was sentenced to 135 months of imprisonment and five years of supervised release. ECF Nos. 604, 607. Defendant is currently serving his sentence at FCI McKean and is scheduled to be released in September 2027. ECF No. 897 at 1.

# DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted). One such statute is 18 U.S.C. § 3582(c)(1)(A), which provides an exception "often referred to as

1

'compassionate release.'" *Id.* Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *Id.* at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

In its Decision and Order denying Defendant's motion for compassionate release, the Court found that Defendant had satisfied the exhaustion requirement but had not presented extraordinary and compelling reasons for release. ECF No. 906. Defendant had argued that his reactive airway disease and obstructive sleep apnea, in conjunction with his incarceration, put him at greater risk for developing complications due to COVID-19. While the Court acknowledged Defendant's underlying conditions, it found that Defendant had not met his burden of showing that they were severe enough to justify release. The Court therefore declined to reach the remaining two requirements—whether Defendant is danger to the community and whether his release would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

Now, in his motion for reconsideration, Defendant presents additional information about his health conditions and asks the Court to reach the remaining two requirements. However, as discussed below, Defendant's motion for compassionate release remains DENIED.

**I.     Defendant's Health Conditions**

In his motion for reconsideration, Defendant argues for the first time that his obesity puts him at greater risk of experiencing complications from COVID-19.

In its prior Decision and Order, the Court noted that Defendant's primary care doctor had indicated that Defendant's obesity was a factor increasing his risk of complications from COVID-

2

19. But because Defendant himself had not raised his obesity as a risk factor, and because his body mass index ("BMI") was below the threshold that the Centers for Disease Control and Prevention ("CDC") had cited as triggering an increased risk for complications from COVID-19, the Court did not consider it. ECF No. 906 at 5 n.3.

Defendant now correctly asserts that the CDC has revised its guidance regarding the risk that obesity poses for complications from COVID-19. Previously, the CDC advised that people with severe obesity—defined as a BMI of 40 or above—were at an increased risk of complications. *See id.* at 4 (citing *Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 24, 2020)) [hereinafter "CDC Risk Article"]. The CDC Risk Article was updated on June 25, 2020. The CDC now advises that individuals of any age with obesity—defined as a BMI of 30 or higher—are at an increased risk of severe illness from COVID-19. *See* CDC Risk Article (last visited July 13, 2020).

Here, Defendant is 43 years old and has a BMI of 35.9. ECF No. 889 at 1; ECF No. 905 at 3. Thus, according to the CDC's updated guidance, his obesity puts him at an increased risk of severe illness from COVID-19.

Further, Defendant also has obstructive airway disease—a condition with asthma-like symptoms—and obstructive sleep apnea. The Court acknowledged these conditions in its previous Decision and Order but found that Defendant had not demonstrated that they are severe enough to justify release.

In his motion for reconsideration, Defendant emphasizes the fact that his prison institution, McKean, does not allow him to use the CPAP machine that he has been prescribed for his sleep apnea. It is McKean's policy—as a "Care Level 1" facility for inmates who are generally healthy

3

and have limited medical needs—not to allow these devices. *See* ECF No. 889 at 2; ECF No. 905 at 1; ECF No. 910 at 6. As support, Defendant cites *United States v. Corbitt*, No. 1:20-CR-00030, 2020 WL 2098271, at *6 (M.D. Pa. May 1, 2020), in which the court found that the defendant's sleep apnea put him at a heightened risk for serious complications from COVID-19 where the prison did not allow him to use his prescribed CPAP machine.

In light of the above, Defendant has arguably made a case that, due to his incarceration, he is living under conditions that make exposure to COVID-19 more likely, and is within the class of individuals whose pre-existing conditions increase the likelihood of complications if infected by the virus. Some "[c]ourts in this Circuit have found such circumstances to be 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)(i)." *United States v. Weiskopf*, No. 19-CR-6093-FPG, ECF No. 45 at 5 (W.D.N.Y. June 16, 2020) (collecting cases).

However, this Court remains unconvinced that Defendant has met his burden of showing extraordinary and compelling circumstances justifying release. *See United States v. Flores*, No. 17 CR. 449-17 (KPF), 2020 WL 2907549, at *2 (S.D.N.Y. June 3, 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citation omitted). This is not because Defendant's conditions are not legitimate risk factors, but because they are likely shared by a significant portion of the federal prison population and because Defendant has not shown the degree of increased risk. *See United States v. Schaefer*, No. 7-cr-498 (LJL), 2020 U.S. Dist. LEXIS 75201, at *6 (S.D.N.Y. Apr. 29, 2020) (emphasizing that reasons for release must be both extraordinary *and* compelling and denying compassionate release where the defendant presented medical conditions that, while potentially serious, were likely shared by a significant portion of the federal prison population); *see also Weiskopf*, No. 19-CR-6093-FPG, ECF No. 45 at 6 (denying compassionate release where defendant showed he was at a higher risk of complications

4

but failed to demonstrate the degree of risk; explaining that defendant need not "establish his increased risk with mathematical precision," but should at least "provide a reasonable estimate of the risk he faces").

The Court now turns to the remaining two § 3582(c)(1)(A)(i) requirements: whether Defendant is a danger to the community and whether release would be consistent with the § 3553(a) sentencing factors.

## II.     Danger to the Community

Defendant argues that he is not a danger to the community for several reasons. First, Defendant is no longer part of the drug conspiracy network involved in his offenses: during his four years of pretrial release, he distanced himself from the criminal network and now lacks access to the resources and accomplices necessary to distribute narcotics. ECF No. 889 at 4. Second, Defendant suggests that his communication can be monitored during release to prevent him from engaging in criminal activity. *Id.* Third, he is not a violent offender and asserts that he poses no threat to law enforcement. *Id.* Fourth, while in custody, Defendant has maintained excellent behavior free of disciplinary actions and has taken full advantage of educational and other programming opportunities. He maintains a prison job with an exemplary record and is permitted to drive a distance of two miles daily without supervision. *Id.* Fifth, he has a solid plan for release—he will return home to live with his wife and will resume employment at Eastman Kodak, where he worked for over 20 years before his incarceration. *Id.* at 5.

The Court acknowledges—as it did at sentencing—that Defendant is a bright individual who has the support of his family, employer, and community members. ECF No. 789 at 10:18-22. Moreover, the Government does not argue that Defendant is a danger to the community. The Court finds that this factor weighs in Defendant's favor.

5

**III.     The § 3553(a) Factors**

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)). The Court already weighed these factors when it imposed the original term of imprisonment. Thus, in the context of the present motion, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, No. 02-CR-114, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (discussing legislative history of provision). In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at *7.

At sentencing, the Court noted that Defendant was "part of a large scale drug organization,"—a "sophisticated operation"—and that Defendant "was a significant player in that

6

operation, serving as a supervisor." ECF No. 789 at 8:8-12. It "was not a one time deal or a small deal, but a large scale operation. It went on for a considerable period of time and it involved large amounts of cocaine." *Id.* at 8:18-20. However, the Court noted that Defendant had no criminal history; accepted responsibility; and was bright, polite, a good father, a good husband, and tried to support his family by maintaining lawful employment. *Id.* at 9:1-4; 9:23-10:3. Because Defendant took responsibility, the Court imposed the low end of the guidelines sentencing range, 135 months. *Id.* at 11:16-20. However, the Court could not overlook Defendant's significant role in the conspiracy. ECF No. 911 at 4.

For all the reasons considered at sentencing, a 135-month sentence was and remains appropriate. If released now, Defendant would have only served approximately 28 months—or about 20 percent—of his 135 month sentence. That term would not substantially satisfy the purposes of the original sentence, as it would fail to "reflect the seriousness of the offense, []promote respect for the law, [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); *see United States v. Alvarez*, No. S3 11 CR 169 (VB), 2020 WL 3640523, at *2 (S.D.N.Y. July 6, 2020) (denying compassionate release to 44 year old defendant with asthma, hyperlipidemia, and slight obesity, who had only served approximately 48 percent of his sentence; explaining that the § 3553(a) factors did not support cutting the sentence by more than half); *United States v. Hueston*, No. 14-CR-332 (PAE), 2020 WL 3472253, at *4 n.7 (S.D.N.Y. June 25, 2020) (collecting cases finding that release was inconsistent with the § 3553(a) factors where defendants had only served approximately 25 percent of their sentences).

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety during the pandemic. Nevertheless, while "[a] just punishment should

not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease," *Vence-Small*, 2020 WL 2214226, at *4, neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Even in light of his medical conditions, Defendant has not demonstrated that a sentence of time served or home confinement is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: July 14, 2020
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court